## A. WILSON *v.* THE STATE.

1. ASSAULT WITH INTENT TO MURDER — CHARGE OF THE COURT. — In a trial for assault with intent to murder, the charge need not notice the distinction between express and implied malice, but is sufficient, on the question of intent, if it so explains the term *malice* as to enable the jury to apply to the evidence the statutory test of the offense, viz., whether, if death had ensued, the homicide would have been murder in either of the two degrees.

2. SAME. — Nor, if the law of aggravated assault is invoked by the evidence in such a trial, is it necessary that a definition of manslaughter be given in the charge, provided the law of aggravated assault is otherwise adequately explained.

3. MUTUAL COMBAT. — If in a mutual combat on equal terms, suddenly and willingly engaged in by both combatants, neither one seeks or takes undue advantage, and one be killed, the offense is but manslaughter, no matter which struck the first blow; and, if death do not ensue from such a combat, the offense could be no more than aggravated assault. But if one took undue advantage, as by using a deadly weapon, and killed his antagonist therewith, the homicide would be murder; and, if death did not ensue, the offense would be assault with intent to murder.

4. SEE the opinion in this case for a lucid illustration and application of these principles.

APPEAL from the District Court of Coryell. Tried below before the Hon. J. R. FLEMING.

An ample statement of the case will be found in the opinion. In their verdict of guilty, the jury assessed the punishment at two years in the penitentiary.

*J. C. Jenkins*, for the appellant, filed an able brief and argument.

*George McCormick*, Assistant Attorney-General, for the State.

WINKLER, J. The appellant was tried and convicted on a charge of assault with intent to murder one Philip Kiser.

There is no assignment of errors. The only questions presented by the record arise upon the motion for a new trial, which was asked upon the following grounds, as we find them set out in the motion :

" 1. Because the verdict of the jury is contrary to the law and the evidence.

" 2. Because the court erred in the charge to the jury, in failing to define and submit to the jury the offense of manslaughter."

The evidence adduced on the trial may be succinctly stated as follows : During the month of August, 1876, the accused and Kiser lived near each other, and were engaged in running a sorghum-mill together, each furnishing a portion of the horses used in the mill. Kiser, on hearing of some trouble between the accused and a little son of his, Kiser's, went to the mill, where a personal rencounter occurred between him and the accused, concerning which the several witnesses who testified on the trial substantially agree.

The following is an extract from the testimony of one witness : " Kiser came up and stood on the opposite side of the evaporator from the accused, and asked, in what wit-

ness thought a rather angry tone, ' What is the difference between you and Joe?' — meaning Kiser's son, evidently. Wilson said to Kiser, ' You go home and attend to your own business.' Kiser replied, ' I will go when I get ready.' Defendant then came round the evaporator to the side where Kiser stood, and struck Kiser over the head with the stirrer, breaking the stirrer. As the defendant came around to Kiser's side of the evaporator, Kiser advanced a little, perhaps as much as two or three feet. After defendant struck Kiser, Kiser struck defendant on the head with the skimmer, then dropped the skimmer and struck at defendant with his fist. Wilson drew his knife, and Kiser turned and commenced walking off, crying out as he walked, ' he's got out his knife; don't cut me, don't cut me,' and all the time watching defendant over his shoulder. Defendant followed him, and directly Kiser struck his head against the mill-lever, which knocked him down, and, while he was down on his hands and knees, trying to get up, defendant stabbed him in the back twice. Kiser got up and started off again, but fell over a pile of cane, when defendant caught him by the leg, and stabbed him in the thigh. Wilson had his arm raised to stab Kiser again when (the witness says) I caught him by the arm, turned him around and led him off. As I led Wilson off, he said to Kiser, ' I will go and get my pistol and settle with you.' * * * While Kiser was retreating, and after Wilson drew his knife, he, Kiser, tried to get out his, but only got it about half open, and when he struck his head against the lever he dropped it; and after the difficulty was entirely over we found it, about half open, lying not far from the lever. He did not draw, or attempt to draw, his until after defendant drew his knife.''

The *stirrer* is described as being '' made of an inch plank, four to six inches square, fastened on a handle two and a half or three feet long, handle about the size of a chair

round." The skimmer is described as " a light tin thing." One witness, speaking of the commencement of the difficulty, after the accused had gone round the evaporator to where Kiser was standing, says that defendant " struck Kiser over the head with the stirrer, breaking the stirrer with the blow. Kiser then struck defendant on the head with the strainer used in skimming the juice, cutting a place on defendant's head about an inch long, and which bled."

Kiser, the assaulted party, testified that he " did not advance on defendant at the time he came round the evaporator, but stood his ground. * * * He said that he, Kiser, is forty-seven years old, and ' tolerably feeble ; ' that the defendant is a young man, and ' pretty stout for his size ; ' that he was ' laid up four or five weeks from the wounds ; ' and that he ' did not draw his knife until after the defendant had drawn his.' "

There was further evidence touching the trouble between the accused and Kiser's son, and also concerning the flight of the accused subsequent to the difficulty, and as to his statements as to what his intentions were at the time it occurred. A witness said that in a conversation with the witness concerning the difficulty, the accused told the witness " that if he had not been prevented by others, he would have killed Kiser ; that it was his intention to kill him."

The presiding judge, in his charge, instructed the jury as to the different degrees of murder, substantially as laid down in the Code, and gave them the distinction between express and implied malice, and in this connection gave the following charge :

" Malice aforethought, as used in the foregoing charges, is of two kinds — express malice and implied malice. Express malice is when one with a sedate, deliberate mind, and formed design is evidenced by external circumstances discovering that inward intention — as, lying in wait, antecedent menaces, former grudges, and concocted schemes to do him

some bodily harm. Implied malice is malice presumed by law from the commission of any cruel and deliberate act, however suddenly done or committed, without just cause or excuse, under such circumstances as are the ordinary symptoms of a wicked, depraved, and malignant spirit, of a heart regardless of social duty, and fatally bent on mischief; and, ordinarily, the law presumes malice from the very fact of killing.''

This charge is followed by another, directly applicable to the case, in which the jury are istructed that '' if, therefore, the jury believe from the evidence that the defendant, Wilson, did, at or about the time and at the place alleged in the indictment, assault and stab the witness, Kiser, with the deliberate intention of taking the life of the said Kiser; and if the jury believe from the evidence that, had the death of said Kiser resulted from such stabbing, the defendant would have been guilty of murder, as defined in sections one, two, and three of this charge, you will find him guilty and assess his punishment at,'' etc.

Counsel insist in argument that this instruction is erroneous, in that it makes murder depend upon the absence of justification or excuse, rather than deliberation, which is the essential ingredient of the crime.

It must be borne in mind that the accused was not on trial for murder, but for an assault with intent to murder, and that in giving to the jury instructions as to what would constitute *that* crime, the court was required to so explain the term *malice* as that they might understand the application of the test laid down in the Code, to this effect:

'' Whenever it appears, upon a trial for assault with intent to murder, that the offense would have been murder had death resulted therefrom, the person committing such assault is deemed to have done the same with that intent.'' Code Cr. Proc., art. 497 (Pase. Dig., art. 2159). We un-

derstand the charge objected to as having been given for this purpose.

The charge would have been more obnoxious to criticism had it been necessary that the jury should believe that, if death had resulted from the assault, it would have been murder in the *first degree*, in order to justify a conviction for assault with intent to murder. But it was only necessary, for the purposes of this trial, that the proof should show that it would have been murder of either degree ; and, as was said in *Anderson* v. *The State*, 1 Texas Ct. App. 730, '' in trials for assault with intent to murder, it is not necessary to notice the distinction between express and implied malice, as either would be sufficient.''

But, further, in another portion of the charge, the jury were told, in the precise language of the Code, art. 607 (Pasc. Dig., art. 2266), that '' murder is distinguishable from every other species of homicide by the absence of the circumstances which reduce the offense to negligent homicide, or manslaughter, or which excuse or justify the homicide.'' So that, taking the charge altogether, and reading it connectedly, as the jury doubtless did, we are of opinion the charge did not make the guilt of the accused depend upon the absence of justification or excuse, rather than upon deliberation.

But it is insisted that the court erred in failing to give the jury a proper charge as to what would have been their conclusions if the jury had found from the evidence that, had death resulted, it would have not been murder, but manslaughter ; or, as tersely stated in the motion for a new trial, the court erred in failing to define and submit to the jury the offense of manslaughter.

The argument seems to be that, inasmuch as if death had resulted from the wounds inflicted the offense would have been murder, and the accused could have been convicted of

an assault with intent to murder, then, if it would not have been murder, the meaning of the term manslaughter should have been defined, and the jury should have been instructed as to what their verdict should be if they should conclude from the evidence that, if death had resulted from the assault, the offense would have been manslaughter, and not murder; or, in other words, if death had resulted, and the offense would have been manslaughter, then they would convict of no higher grade than an aggravated assault.

We are not prepared to controvert the position assumed, as an abstract proposition of law, that if death had ensued under circumstances such as would have amounted to manslaughter, and not murder, then, as death did not result, the accused could not have been convicted of a higher grade of offense than an aggravated assault; and a case might arise requiring such instruction. Still, we are of opinion the charge given necessarily resulted in the same thing, and was couched in language more concise and less liable to confuse than if it had been put to the jury as contended for. The charge is as follows:

" The jury are further charged that, if they believe from the evidence that the defendant Wilson did, at or about the time and at the place alleged in the indictment, assault the said Kiser with a deadly weapon, under circumstances not amounting to an intent to murder, as hereinbefore described, you will, if you so believe from the evidence, find the defendant guilty of an aggravated assault, and assess his punishment," etc., giving the penalty for that grade of offense.

The jury were also instructed as to the defendant's right of self-defense, and the law of simple assault and reasonable doubt; and all in a manner certainly as favorable to the accused as the testimony warranted. Counsel, in an able argument, contends that the law applicable to fighting, as upon a sudden quarrel, applies to the case of the appellant; but conceding, for the sake of the argument, that the proofs

give that aspect to the difficulty, then the law is against the appellant.    Mr. Wharton says:

"The rule that words of reproach, or provoking actions, or gestures of contempt, will not free the party killing from the guilt of murder, without an assault upon the prisoner, will not hold in cases where, from such words or gestures, or indeed upon any other sudden provocation, the parties come to blows, *no undue advantage being sought or taken on either side*.    Thus, where A, using provoking language and behavior towards B, B strikes him, upon which a combat ensues, in which A is killed, it was holden to be manslaughter; for it was a sudden affray, and they fought upon equal terms, and in *such combats upon sudden quarrels it matters not who gave the first blow*.    But, if B had drawn his sword and made a pass at A, his sword then undrawn, and thereupon A had been killed, this would have been murder; for B, by making his pass, *his adversary's sword undrawn*, showed that he sought his blood, and A, endeavoring to defend himself, *which he had a right to do*, is no excuse for B. But, if B had first drawn, and forbore until his adversary had drawn, too, it had been no more than manslaughter." Whart. Cr. Law, sec. 985, and cases there cited.

In the present case, treated as a sudden quarrel, and assuming that both parties engaged in the contest willingly, then, if both fought on equal terms, no undue advantage being sought or taken by either, and one had lost his life in the contest, such a homicide would have been manslaughter; but, if one party had sought or taken any undue advantage over his antagonist, and in using this advantage, had slain him, such killing would have been murder.    So, then, it would still be a question for the jury to determine whether the parties, supposing they both engaged willingly in the fight, fought on equal terms or not, or whether the accused took any undue advantage.

We are of opinion, however, that, from the evidence, it

does not appear that the fight was thus engaged in. Kiser had a right to make the inquiry he did; he is not shown to have offered to fight; when the defendant advanced upon him in a threatening manner, he was not bound to retreat; and, the defendant having provoked and commenced the fight upon unequal terms, and finding his adversary disposed to stand his ground, put him at still further disadvantage by drawing his knife, he thus rendered himself amenable to the law for the consequences that followed.

We find no such error or omission in the charge of the court as would warrant a reversal of the judgment. The indictment is sufficient to charge the offense, the evidence is amply sufficient to support the verdict, and the motion for a new trial was properly overruled. The judgment is affirmed.

*Affirmed.*